IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JAMES BURRESS, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>PROGRESSIVE PREMIER INSURANCE COMPANY OF ILLINOIS, an Ohio corporation, doing business as "Progressive Insurance,"<br><br>        Defendant. | **Civil Action No.**_____<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, JAMES BURRESS, on behalf of himself and all others similarly situated, sues Defendant, PROGRESSIVE PREMIER INSURANCE COMPANY OF ILLINOIS, an Ohio corporation, doing business as "Progressive Insurance," and alleges:

### I.   PRELIMINARY STATEMENT

1.   Plaintiff James Burress brings this lawsuit on behalf of himself and other consumers like him because of Defendant's violations of section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq*. ("FBPA").

2.   Defendant is an auto insurance company and had an auto policy with Plaintiff. Defendant, as an insurance company, processes "claims" made by its policyholders. Defendant, on its website, defines a "claim" as "[a]n insurance claim is simply a request for financial compensation from an insurance company."[1]

---

[1] "How to file an auto insurance claim", *www.progressive.com/answers/how-to-file-an-auto-claim*, Dec. 26, 2024.

3. Defendant falsely and inaccurately reported to LexisNexis, a consumer reporting agency, that Plaintiff made a "claim" under his policy when he did not. Plaintiff thereafter disputed the false and inaccurate reporting with LexisNexis. LexisNexis transmitted Plaintiff's dispute to Defendant for investigation and to verify the accuracy of the "claim" it was reporting. Defendant failed to conduct a reasonable investigation of Plaintiff's dispute and continued to verify the "claim" as accurate when it was not as reflected in Defendant's own records.

4. Defendant's failure to conduct a reasonable investigation violated both the FCRA and FBPA.

5. Plaintiff, and the members of the proposed Class, suffered concrete harm as a result of Defendant's violations including reputational harm, diminished credit scores, and lost time, effort and expense to dispute the inaccurate information Defendant reported about them.

## II. JURISDICTION & VENUE

6. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Defendant is registered to do business in this District and regularly does business in this District.

7. Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b).

## III. THE PARTIES

8. Plaintiff is a natural person and resident of Georgia. At all relevant times, he was a "consumer" under the FCRA and FBPA.

9. Defendant is an Ohio insurance company that regularly conducts business throughout the United States, including within the Northern District of Ohio, and maintains its principal place of business in this District.

## IV. FACTUAL ALLEGATIONS

### *Applicable Legal Framework*

10. "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681).

11. FCRA-covered entities must follow procedures in reporting consumer credit information that both "meet [ ] the needs of commerce" and are "fair and equitable to the consumer." *Saunders v. Branch Banking and Tr. Co. of Virginia*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting 15 U.S.C. § 1681(b)).

12. In addition to well-known CRAs like Equifax, Experian, Trans Union, LexisNexis and Innovis, the FCRA regulates the conduct of "furnishers of information," entities that provide—or "furnish"—information about consumers to CRAs. Defendant is a furnisher of information under the FCRA. Defendant is also subject to the FBPA.

13. If a consumer disputes "the completeness or accuracy of any item of information contained in [his or her] file at a [CRA]," the FCRA requires the CRA to take several affirmative steps. *See* 15 U.S.C. § 1681i(a)(1)(A).

14. Relevant here, the CRA that receives the consumer's dispute must "provide notification of the dispute to [the furnisher] who provided any item of information in dispute" [to the CRA] and "shall include all relevant information regarding the dispute that the [CRA] has received from the consumer[.]" 15 U.S.C. § 1681i(a)(2).

15. After receiving notice of the consumer's dispute from the CRA, the furnisher must "conduct an investigation with respect to the disputed information [,] . . . review all relevant

information provided by [the CRA, and] report the results of the investigation to the [CRA]." 15 U.S.C. § 1681s 2(b)(1)(A)-(C).

16. The FCRA accordingly requires that a furnisher of credit information "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *Saunders*, 526 F.3d at 148 (the "FCRA requires furnishers to determine whether the information that they previously reported to a CRA is 'incomplete or inaccurate.'") (citation omitted).

17. If the disputed information "is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," the furnisher must promptly "modify that item of information," "delete that item of information," or "permanently block the reporting of that item of information." 15 U.S.C. § 1681s 2(b)(1)(E)(i)-(iii).

18. The complete and accurate furnishing of information about consumers is important because even small errors can disproportionately influence the cost of certain services, such as automobile insurance.

19. A violation of the FCRA is additionally a violation of the FBPA.

### *Defendant's Relevant Business Practices*

20. Defendant insures private passenger automobiles and other vehicles.

21. Upon information and belief, Defendant and its affiliates share records concerning their respective policyholders' insurance claims in the regular course of business.

22. Defendant participates in the "Comprehensive Loss Underwriting Exchange" ("C.L.U.E."), a voluntary program pursuant to which it furnishes information about its policyholders to LexisNexis.

23. LexisNexis maintains a database that includes, *inter alia*, information furnished by C.L.U.E. participants.

24. For a fee, LexisNexis prepares reports for its customers for insurance underwriting and risk assessment purposes about consumers using information furnished by Defendant and others.

25. The C.L.U.E. reports prepared by LexisNexis are "consumer reports" as defined by the FCRA, *see* 15 U.S.C. § 1681a(d)(1)(A), and LexisNexis is a consumer reporting agency ("CRA"), *see* 15 U.S.C. §§ 1681a(f), 1681b(a)(3)(C).

26. Defendant provides information to LexisNexis and is a "furnisher of information" as contemplated by the FCRA.

### *Defendant Furnishes Inaccurate Information That Harms Plaintiff*

27. Defendant provided personal automobile insurance to Plaintiff.

28. Defendant furnished information about its insurance policy, which included information about Plaintiff, to LexisNexis.

29. In 2024, LexisNexis prepared a C.L.U.E. report about Plaintiff and published it to an insurance company for underwriting purposes.

30. The report inaccurately reported that Plaintiff had made a claim with Defendant in relation to an automobile accident that occurred in January 2024. This was false and inaccurate. Plaintiff had not made such a claim. Defendant never paid Plaintiff any money for such a claim. Defendant never reimbursed Plaintiff under its policy with Plaintiff for any such claim. Plaintiff was not at fault in the accident.

31. The information harmed Plaintiff by, without limitation, falsely portraying him as having made a claim when he did not. Further, Defendant reported the inaccurate information in such a manner that it appeared he may have been at fault in the accident.

32. As a result of Defendant's inaccurate information, the company that received the C.L.U.E. report quoted Plaintiff much higher premiums than would have been the case if Defendant had not associated the inaccurate information with him, and Plaintiff was unable to obtain the rates for personal automobile insurance otherwise available to him.

33. Plaintiff was forced to obtain personal automobile insurance from a different company at rates several hundred dollars a year higher than those the company that had received the subject C.L.U.E. report would have offered him if the inaccurate information had not been associated with him.

***Plaintiff Disputes the Inaccurate Information Defendant Furnished***

34. Shortly after LexisNexis prepared the C.L.U.E. report that included the inaccurate information Defendant had furnished about him, Plaintiff contacted LexisNexis to dispute the accuracy and/or completeness of Defendant's information.

35. Upon information and belief, pursuant to its independent statutory obligation to notify the furnisher of disputed information upon receipt of a consumer's dispute of that information under FCRA section 1681i(a)(2), LexisNexis provided notice of Plaintiff's dispute to Defendant.

36. Upon receipt of notice of Plaintiff's dispute, Defendant responded to LexisNexis, but failed to correct the inaccurate information.

37. Additionally, Defendant failed to instruct LexisNexis to mark the information Plaintiff had disputed as "disputed" consistent with its obligation under FCRA section 1681s-2(b).

38. Notwithstanding his dispute, the inaccurate information reflecting that he had made an insurance claim remained in Plaintiff's LexisNexis file.

39. Defendant did not correct the information Plaintiff had disputed concerning the inaccurate information included in the LexisNexis report, which remained in his LexisNexis file for some time. Defendant's own records reflected that Plaintiff never made a request for financial compensation from Defendant in relation to the subject accident. Defendant's own records reflected that Plaintiff never received any payment from Defendant in relation to the subject accident.

40. As a direct and proximate result of Defendant's above-alleged conduct, including the failure to properly investigate Plaintiff's dispute, Plaintiff suffered harm, including the loss of time and resources associated with his fruitless disputes, higher insurance premiums, and harm to his credit reputation.

41. At all relevant times, Defendant acted through its duly authorized agents, and/or employees with respect to the above-alleged conduct.

42. At all relevant times, Defendant willfully or negligently violated the requirements of FCRA section 1681s-2(b) and the FBPA.

### *Progressive's Standard Dispute Processing Procedures*

43. When consumers submit a dispute to LexisNexis regarding information on their C.L.U.E. report, LexisNexis forwards the dispute to the furnisher of the information (such as Progressive), as required by the FCRA.

44. Upon information and belief, when Progressive receives notification of the consumer's dispute from LexisNexis, it follows a standard and systemically unlawful process in

which it only reviews its own internal computer screen for the claim information and repeats back the same information that was previously reported to LexisNexis.

45. Upon information and belief, in accordance with its standard procedures, Progressive does not conduct any substantive review, such as listening to telephone recordings or reviewing other substantive documents, to determine if the information in its system is accurate when it receives a consumer dispute from LexisNexis.

46. Upon information and belief, Progressive's dispute processing procedures are uniform and consistent and stayed the same between the Plaintiff and the putative class members during the proposed class period.

### *Progressive's Violations Were Willful*

47. Progressive's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. Progressive's conduct was willful because it was accomplished through reckless procedures that prioritize its own profitability over accuracy.

48. In addition, the willful nature of Progressive's FCRA violations can be established by, for example:

> a. The FCRA was enacted in 1970; Progressive has had 55 years to become compliant;
>
> b. Defendant is a corporation with access to legal advice through its own general counsel's office and/or outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;
>
> c. Progressive knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

      d.      Progressive voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

      e.      Progressive's violations of the FCRA were repeated and systematic.

49.    Progressive's violations were willful. Progressive knew that it would report inquiries regarding potential coverage claims even if no request or demand for payment was made because of the uniform policies and procedures that it adopted. Despite this, it told consumers and the public at large that only requests or demands for payment were considered "claims" on its website.

50.    Progressive knew that its false statements about claims operated to its benefit. It misled consumers into believing that they could call Progressive to see if an incident would be covered by their policy without incurring the negative impact of filing a claim.

## V. CLASS ALLEGATIONS

51.    Plaintiff seeks to represent the following Classes:

### *FCRA Class No. 1 - Failure to Correct Upon Dispute Class*

All individuals with an address in the United States and its Territories concerning whom Defendant reported that such individual made a "claim" with Defendant where Defendant's records reflect that the individual did not (i) request financial compensation from Defendant nor (ii) receive financial compensation from Defendant in relation to an accident and for whom Defendant thereafter received notice from a consumer reporting agency of the individual's dispute of such a claim as inaccurate and, in response, Defendant failed to correct or remove the disputed information for the period beginning two years prior to the filing of this matter until the date of the Court's class certification order.

### *FCRA Class No. 2 – Failure to Mark Disputed Information as "Disputed" Class*

All individuals with an address in the United States and its Territories concerning whom Defendant received notice of a dispute from a consumer reporting agency and for whom Defendant failed to mark the disputed information as "disputed" when it subsequently furnished the information to the consumer

9

reporting agency from which it received notice of the dispute, for the period beginning two years prior to the filing of this matter until the date of the Court's class certification order.

### *Class No. 3 – FBPA Class*

All individuals with an address in Georgia concerning whom Defendant reported that such individual made a "claim" with Defendant where Defendant's records reflect that the individual did not (i) request financial compensation from Defendant nor (ii) receive financial compensation from Defendant in relation to an accident and for whom Defendant thereafter received notice from a consumer reporting agency of the individual's dispute of such a claim as inaccurate and, in response, Defendant failed to correct or remove the disputed information for the period beginning two years prior to the filing of this matter until the date of the Court's class certification order.

52. Plaintiff reserves the right to amend the above definitions based upon developments in discovery or as otherwise appropriate and permitted.

53. Members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that they minimally number in the thousands.

54. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether Class members disputed inaccurate information that Defendant had furnished to a CRA about them; whether Defendant failed to correct the disputed information; whether Defendant failed to instruct the CRA to mark the disputed information as "disputed;" whether Defendant's conduct was negligent, willful, or reckless; and whether members of the Classes are entitled to statutory damages, actual and/or punitive damages, and in what amounts.

55. Plaintiff's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

56. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel who are experienced in handling FCRA and other consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

57. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

58. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendant's records.

## VI. CLAIMS FOR RELIEF

### COUNT ONE
### On Behalf of Plaintiff and FCRA Class No. 1 – Violation of 15 U.S.C. § 1681s-2(b)

59. Plaintiff incorporates the foregoing paragraphs as though set forth herein.

60. After receiving notice from one or more CRAs of Plaintiff's and Class members' disputes of inaccurate information that Defendant had previously furnished to the CRA about them, Defendant negligently or willfully failed to correct the inaccurate information, in violation of FCRA section 1681s-2(b).

61. Defendant is liable to Plaintiff and members of the FCRA Class for all relief available pursuant to FCRA sections 1681n and 1681o.

## COUNT TWO

### On Behalf of Plaintiff and FCRA Class No. 2
### for Defendant's Violation of 15 U.S.C. § 1681s-2(b)

62. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

63. After receiving notice from one or more CRAs of Plaintiff's and Class members' disputes of information that Defendant had previously furnished to the CRA about them, Defendant negligently or willfully failed to mark the disputed information as "disputed," in violation of FCRA section 1681s-2(b).

64. Defendant is liable to Plaintiff and members of Class No. 2 for all relief available pursuant to FCRA sections 1681n and 1681o.

## COUNT THREE
### On Behalf of Plaintiff and FBPA Class

65. Plaintiff incorporates the foregoing paragraphs as though set forth herein.

66. After receiving notice from one or more CRAs of Plaintiff's and Class members' disputes of inaccurate information that Defendant had previously furnished to the CRA about them, Defendant negligently or willfully failed to correct the inaccurate information, in violation of the FBPA. Defendant's violations of the FCRA are additionally a violation of the FBPA.

67. Accordingly, Defendant is liable to Plaintiff and members of FBPA Class for damages and injunctive relief available pursuant to O.C.G.A. § 10-1-399

### VII.  JURY TRIAL DEMAND

68. Plaintiff demands trial by jury on all issues so triable.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court grant him the following relief:

A. certifying the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and his counsel to represent it;

B. awarding actual damages pursuant to 15 U.S.C. § 1681o(a) and the FBPA;

C. awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation to each member of the Class pursuant to 15 U.S.C. § 1681n(a);

D. awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. directing equitable injunctive relief under the FBPA for the FBPA Class;

F. awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o and the FBPA; and

G. awarding such other and further relief as may be necessary, just, and proper.

Dated: January 14, 2025

Respectfully submitted,

*/s/ Robert W. Murphy*
Robert W. Murphy
Florida Bar No. 717223
LAW OFFICE OF ROBERT W. MURPHY
440 Premier Circle, Suite 240
Charlottesville, VA 22901
T: (954) 763-8660
F: (954) 763-8607
rwmurphy@lawfirmmurphy.com

LOVE CONSUMER LAW
John A. Love, Esq.
Ga Bar No. 459155
2500 Northwinds Parkway, Suite 330
Alpharetta, GA  30009
T: 404.855.3600
F: 404.301.2300
tlove@loveconsumerlaw.com